## PEOPLE v. WEAVER.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

**1. ADULTERATION—ACTION FOR PENALTY—QUESTIONS FOR JURY.**

The Agricultural Law, Laws 1893, p. 659, c. 338, § 12, and amendments, provides that the inspector, before taking a sample of milk, shall request the person delivering it to thoroughly stir or mix the same," and that if he refuse to stir or mix, as requested, the inspector shall himself so stir and mix the milk before taking the sample. In an action to recover the penalty for the delivery of adulterated milk, it appeared that the inspector told defendant that he wished to examine the milk, and that he wanted a fair sample of it, whereupon he handed defendant a dipper, and told him to stir the milk. Defendant gave the milk a few turns with the dipper, and handed it to the inspector, who did not treat defendant as having refused the inspector's request, and the inspector did not stir or mix the milk before taking the sample. It was shown that it had been drawn at a place three miles distant, and that a portion of it was night's milk, on which cream had risen. The sample was only .02 of 1 per centum of water above the required standard, and only .08 of 1 per centum of solids below the required standard. *Held*, that the question whether the sample was a fair one was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Adulteration, § 18.]

**2. SAME—METHOD OF TAKING SAMPLES—DELIVERY OF SAMPLE TO DEFENDANT.**

The Agricultural Law, Laws 1893, p. 659, c. 338, § 12, as amended, provides in relation to adulterations of milk that an inspector, at the time of taking a sample at the place of delivery, shall take a duplicate, and seal them, and deliver one to the person delivering the milk. In an action to recover a penalty for the delivery of adulterated milk, it appeared that when the inspector had sealed the samples, and had them ready, defendant had gone, and that later in the day the inspector called at defendant's house, and left the duplicate with defendant's wife, and that the sample was brought to defendant's attention that night. *Held* that, though defendant was not at a great distance from his house at the time the sample was given to the wife, there was a sufficient delivery.

**3. SAME—CONSTRUCTION OF STATUTES.**

The statutory provision as to the delivery of the duplicate sample is imperative, and no penalty can be recovered in a case where the inspector fails to comply with it.

**4. SAME—PROVISIONS FOR TAKING SAMPLE.**

Where, in an action under Agricultural Law, Laws 1893, p. 655, c. 338, to recover a penalty for the delivery of adulterated milk, it appeared that after the taking of a sample at the place of delivery a sample was taken from the herd, and that such sample was above the standard, while the other sample was below the standard, the fact that the inspector was not present at the entire milking of the herd was no bar to a recovery, since the provision for the presence of the inspector at the milking is for the protection of the people, as, under the statute, if the unadulterated milk is below the standard no action can be maintained.

Appeal from Trial Term, Jefferson County.

Action by the people against John Weaver to recover a penalty for the delivery of adulterated milk, contrary to Laws 1893, p. 661, c. 338, § 23, and amendments thereto. From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

101 N.Y.S.—61

Julius M. Mayer, Atty. Gen., and Horace McGuire, Deputy Atty. Gen., for the People.

Cobb & Cosgrove, for respondent.

WILLIAMS, J. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event. The action is to recover a penalty for the delivery to a cheese factory of adulterated milk, contrary to the provisions of section 23 of the agricultural law (chapter 338, p. 661, Laws 1893, and amendments thereto). The milk was delivered October 30, 1903. It was claimed that it was adulterated, under the provisions of section 20 of the law, in that it contained more than 88 per centum of water or fluids and less than 12 per centum of milk solids. The penalty is prescribed by section 37 of the law. The adulteration of the milk was sought to be proved by the certificate of a chemist as to the sample taken, pursuant to section 12 of the law, which was by section 6 made presumptive evidence of the facts therein stated. The certificate showed that the milk contained 88.08 per centum of water or fluids, and only 11.92 per centum of milk solids. The defenses sought to be established were: (1) That the statute (section 12) was not complied with in taking the factory sample, and it was not a fair sample. (2) That the statute (section 12) was not complied with in taking the herd sample. There was no analysis of the duplicate samples delivered to the defendant, and the question as to the correctness of the analysis by the chemist for the people was not left to the jury. The court charged, if the samples analyzed were taken as required by the statute, and were fair samples, the people were entitled to a verdict. The specific questions of fact submitted to the jury were: (1) Whether the statute was complied with as to the stirring of the milk in the case of the factory sample, and the sample was a fair one. (2) Whether a duplicate sample of the factory milk was delivered to the defendant. (3) Whether the statute was complied with as to the taking of the herd sample, so far as the presence of the inspector during the entire time the cattle were being milked was concerned. The people claimed there was no evidence to authorize the submission of any of these questions to the jury, and that the people were entitled to the direction of a verdict against the defendant.

In determining these questions, we must regard the facts as settled in accordance with the evidence given on the part of the defendant, so far as the evidence is conflicting.

First. As to the stirring of the milk before taking the factory sample, the statute (section 12) provides that the inspector, before taking the sample, shall request the person delivering the milk to thoroughly stir or mix the same, and if he refuses to stir or mix the same as requested, then the inspector shall himself so stir and mix the same before taking the sample, and in case of such refusal the defendant shall thereafter be precluded from introducing evidence to show that the sample was not a fair one. The milk was in two cans when delivered; one contained the night's, and the other the morning's, milk. At the factory the two cans of milk were turned into one factory can. Then the inspector said to the defendant that he wanted to examine his milk; that he wanted a fair sample of it. He handed defendant a dipper, and

told him to stir the milk. The defendant gave the milk two or three turns with the dipper, filled it, and handed it to the inspector, and from this the sample was taken. The inspector did not tell defendant to thoroughly stir or mix the milk, in the language of the statute, and the inspector did not treat the defendant as refusing his request, and did not himself stir or mix the milk before taking the sample. The milk had been drawn three miles from defendant's farm to the factory. The cream had risen on the night's milk while standing in the can at the farm, and it was claimed the cream was not fully distributed in the milk again before the sample was taken, and that as a matter of fact the sample was not a fair one. In this connection it will be remembered that the analysis showed the sample only .02 of 1 per centum of water or fluids above the required standard, and only .08 of 1 per centum of milk solids below the required standard. The claim is that, the cream not being equally distributed in the milk, the sample might well show this small difference, and nevertheless, as a whole, be up to the required standard. If the statute as to the stirring of the milk before taking the sample had been fully complied with, if the inspector had requested the defendant to thoroughly stir or mix the milk, and such request had been fairly complied with, or had been refused, and the inspector had then himself fairly done the stirring or mixing, there would have been little or no reason for claiming the sample was not a fair one, and very likely there would have been no question for the jury on the subject; but under the circumstances of this case we cannot say that the fairness of the sample was a question of law and not one of fact for the jury. The inspector should have requested, not only the stirring, but thorough stirring or mixing of the milk. The defendant, not being an expert, may not have appreciated so well as the inspector the necessity of the milk being thoroughly mixed in order to obtain a fair sample. The word "thoroughly" was put in the statute for a purpose. The design was that the inspector should, so far as he could, see to it that a fair sample was obtained for examination; and certainly if he saw that the defendant failed to thoroughly stir or mix the milk, it was his duty to see that it was done by defendant, or else treat defendant as having refused his request, and himself do the stirring. It is the policy of the law to see that justice is done in such a case, and that the farmer understands and appreciates the necessity of care in stirring, and complies fairly with the request, or then that the inspector himself take a hand at the stirring and mixing of the milk before the sample is taken; and it may just as well be said that the farmer refuses to comply with the request if he stirs but little, as the inspector knows and appreciates, as if he fails to stir it at all. If the farmer willfully and knowingly fails to stir or mix enough, when requested to do so thoroughly, he may well be precluded from claiming he has not complied with the request; but if he acts fairly and honestly, then the inspector should request a further stirring or mixing, and in case of a refusal himself do it. No harm can come of too much stirring. The important consideration here is the clause that the sample was taken from a can of milk not thoroughly stirred or mixed, to the inspector's knowledge. The question of a fair sample at the factory was one of fact for the jury. Precisely what the court intended to do when the coun-

sel for the people excepted to the submission of this question to the jury it is difficult to say. The jury had been fully charged upon this question, and must have considered it the real question involved upon this branch of the case. If we are to take the court literally, what it did was to withdraw from the jury the question as to whether the sample was a fair one, and to submit only the question whether the milk was on that occasion mixed and stirred thoroughly, as the statute contemplates. Well, suppose it was not, the people were not necessarily chargeable with the failure to so stir or mix it. It was the duty of the defendant primarily to do the stirring and mixing. Whether a failure to have the milk thoroughly stirred or mixed should defeat the people's right to recover would be dependent upon other considerations, and if the court intended to have a right to recover depend upon this consideration alone, the charge was erroneous, and calls for a reversal of the judgment. This is apparent from the discussion hereinbefore had with reference to this branch of the case, and needs no further consideration. The people excepted to this charge and to this submission of the new question to the jury. If the court meant to have the right to recover depend upon a full compliance by the inspector with the provisions of the statute as to mixing and stirring the milk, it failed to so express itself, and the charge must be considered as it was delivered, and not as it was intended.

Second. As to the delivery of a duplicate of this sample to the defendant, there seems to be little or no conflict in the evidence. The statute provides that the inspector shall, at the time of taking the sample, take a duplicate also, seal both, and deliver one to the person delivering the milk. The inspector in this instance appears to have acted promptly in preparing and sealing the samples, and when he had them ready the defendant had gone, and he could not then and there deliver the duplicate to him. The defendant says himself he drove right away home as soon as he delivered the milk. Later in the day the inspector called at defendant's house, and left the duplicate sample with defendant's wife. She set it away, and called defendant's attention to it, and he saw it the same night. It seems to us this was a delivery to the defendant of the duplicate, sufficient to comply with the law. The statute requires the delivery at the time the sample is taken, but it could not be literally so done if the defendant went away to his home, three miles distant, before the sample and duplicate could be prepared. It was the defendant's fault that this provision of the statute could not be literally complied with, and he could not take advantage of his own fault. The inspector was not bound to follow him up at once, and make the delivery. He did all that he was in any event bound to do when he went to defendant's house the same day, and left the duplicate with his wife for him. No harm came to any one. The defendant got the duplicate, and no question was made but it was the same one prepared at the time the sample was taken. It is said that the delivery was ineffectual because the inspector, after going three miles from the factory to defendant's home, left the duplicate with the wife, instead of going out in the field away from the house and giving it personally to the defendant himself. The court appears

to have had some such idea as this, for in submitting the case to the jury it said:

"If the defendant went away [from the factory], ran away, so to speak, got away, so that he [the inspector] could not tender him the bottle, why, then, it would only be fair to say that the officer might have a right to hunt him up, and to deliver that sample to him. In this case, when they went to defendant's house, he [defendant] was not a great ways off, but they left it with his wife, and I leave it to you, gentlemen, as a question of fact, whether or not there was, under the circumstances, a delivery of this sample to the defendant on that occasion; that is, in case you find that that was a fair sample that was taken at the factory."

It is undoubtedly true that this provision of the statute as to the delivery of the duplicate sample is imperative, and that a recovery could not be had if the inspector failed to comply with it. The analysis of the sample could not be used as evidence if there was a failure to comply with this provision of the statute, and no excuse given for not complying with it, for which the defendant was responsible. Therefore, the jury, under this charge, might render a verdict for defendant based upon this ground alone, if they found there was no delivery as a matter of fact.

This charge was erroneous. There was no question for the jury. The court should have disposed of it as a matter of law. This question was raised at the close of the charge, was fully discussed and understood by the court, and the charge in this respect was not withdrawn, but adhered to. The question was left for the jury. We cannot say but that the verdict was based wholly upon this finding of nondelivery of the duplicate sample; the jury finding all other questions in favor of the people.

Third. As to the presence of the inspector the entire time the herd was being milked and the sample there taken, there was a conflict in the evidence; the people claiming he was, and the defendant that he was not. The question must therefore be treated as if he was not present the entire time. The defendant and his witnesses, however, testify that the milk from which the herd sample was taken, as it came from the cows, had not been tampered with; nothing put in or taken out of it. The analysis of this sample showed the milk better than that taken to the factory, and clearly above the standard, 86.04 of 1 per centum only of water or liquids, 13.96 of 1 per centum of milk solids. Standard was water not above 88 per cent., and milk solids not below 12 per cent. The provision for taking the herd sample is for the protection of the farmer. It can only be taken with his consent. If from the analysis thereof it appears that the herd is a poor one, that its unadulterated milk is below the standard, and no higher than the milk delivered at the factory, then no action can be maintained for the delivery of adulterated milk at the factory. The provision, however, for the presence of the inspector at the entire milking of the herd is for the protection of the people, to see that there is no adulteration of that milk, so as to reduce it below the standard, and below that delivered at the factory. The analysis here, however, was so high as to protect fully the people, and it is not apparent how the defendant could possibly suffer from the absence of the inspector. What could be done to the milk in his absence to raise its standard? Who would

be likely to interfere with the milk in a way to raise its standard? Certainly not the defendant. He could be relied upon to see that the milk was not so tampered with as to raise the standard above that delivered at the factory if not naturally so, and the evidence is uncontradicted that it was in the condition in which it came from the herd. There is no dispute but the whole herd, and only the herd, was milked. It is impossible to see how the defendant could suffer from a failure by the inspector to perform the duty prescribed in the statute of presence the entire time the milking was being done, under the analysis and conceded facts appearing in this case; and yet the charge to the jury was that, if the inspector was not present all the time, a recovery could not be had. This was erroneous. We do not intend to decide that under all circumstances the absence of the inspector any part of the time the herd is being milked would be unimportant, but only that, under the circumstances of this case, it was so. If upon any theory the farmer could suffer from such absence, the rule would be different. As a general proposition, this provision is for the protection of the people only.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.