### TRIANGLE CANDY CO. et al. v. UNITED STATES.

#### No. 10406.

Circuit Court of Appeals, Ninth Circuit.

Aug. 8, 1944.

Haight, Trippet & Syvertson and Lyle C. Newcomer, all of Los Angeles, Cal., for appellants.

Charles H. Carr, U. S. Atty., and James M. Carter and Betty Marshall Graydon, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal by defendants and appellants, Triangle Candy Company, a corporation, and Bernard G. Kennepohl, from judgments rendered against them after appellants were found guilty on six counts of violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 331(a) prohibiting "the introduction into or delivery for introduction into interstate commerce of any food, drug, device or cosmetic that is adulterated or misbranded."

There were seven counts in the information. The adulteration charge was twofold in character in all but the first count. Alleged in each count was adulteration under 21 U.S.C.A. § 342(a) (4), providing that a food shall be deemed adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." In all counts save the first it was additionally alleged that there was adulteration of the candy involved under 21 U.S.C.A. § 342(a) (3), providing that a food shall be deemed to be adulterated "if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food."

The corporate and individual defendants were each found guilty on counts II through VII. A fine of Five Hundred Dollars was imposed on the corporate defendant as to each count; its fine totaled Fifteen Hundred Dollars by virtue of the concurrency of some of the sentences. Kennepohl was fined Two Hundred and Fifty Dollars on each count, concurrency reducing the total sum to be paid to Five Hundred Dollars.

It is the contention of the appellants that Congress made the supplying to them of part of the samples whose analysis provided the basis for the charges a condition precedent to the maintenance of a prosecution under the Act. It was stipulated at the trial that though seasonable written request was made for such samples as to each count, it was not complied with as to the samples involved in counts III, IV, VI, and VII.

Appellants' contention must be considered since, though some of the fines ran concurrently, the judgment cannot be entirely sustained if the conviction on these four counts are invalid. Kennepohl was fined Two Hundred and Fifty Dollars on counts II and III, and the same amount on each of the other four last counts, the latter four to run concurrently with each other, and with the separate fines in counts II and III. Since samples were furnished as to counts II and V in conformity with the statute and regulations, the judgments as to two non-concurrent fines are plainly valid with respect to the sample requirement and no finding need be made as to this question so far as Kennepohl is concerned.

However, a somewhat different situation is presented with respect to the corporate appellant. As to it fines of Five Hundred Dollars were levied on counts II, III and IV; and similar fines as to the last three counts, these to run concurrently with each

other and with the fines on counts II, III and IV. To uphold in its entirety the judgment as to the corporate defendant, it would be necessary to find that three valid and non-current fines were levied. But if the sample provision requirement be jurisdictional, not more than two of the fines can be upheld.

The sample provision requirement of the Act (21 U.S.C.A. § 372. Availability to owner of part of analysis samples:) is as follows:

"(b) Where a sample of a food, drug, or cosmetic is collected for analysis under this chapter the Administrator shall, upon request, provide a part of such official sample for examination or analysis by any person named on the label of the article, or the owner thereof, or his attorney or agent; except that the Administrator is authorized, by regulations, to make such reasonable exceptions from, and impose such reasonable terms and conditions relating to, the operation of this subsection as he finds necessary for the proper administration of the provisions of this chapter."

The Administrator, in pursuance of this authorization to make reasonable exception from the sample which "shall * * * [be] provide[d]" made a regulation regarding sample provision. S.R.A. F.D.C. 1, Rev. 1—Issued August, 1939, Revised August, 1941. Its pertinent provisions are Regulation [2.700]. "(b) When an officer or employee collects an official sample of a food, drug, or cosmetic for analysis under the Act, he *shall collect* at least twice the quantity estimated by him to be sufficient for analysis, unless * * *"[1]

There follows a list of seven exceptions, none of them pertinent to the facts of this case. The regulation continues "In addition to the quantity of sample prescribed above, the officer or employee shall, if practicable, collect as part of the sample such further amount of the article as he estimates to be sufficient for use in the trial of any case that may arise under the Act based on the sample."

The government does not contend that any of those employed to collect samples obeyed the mandate of the regulation that they *"shall* collect at least twice the amount estimated by him to be sufficient for analysis," much less that he collected enough more for use at the trial. The most the

testimony shows in this regard is that one inspector took one pound of candy as a sample (under count IV) which he "felt" was "sufficient" to supply a sample to appellant. He said nothing about its being double the amount required for analysis.

After requiring such amounts of samples to be collected, the next subsection (c) provides:

"After the Food and Drug Administration has completed such analysis of an official sample of a food, drug, or cosmetic as it determines, in the course of analysis and interpretation of analytical results, to be adequate to establish the respects, if any, in which the article is adulterated or misbranded within the meaning of the act, or otherwise subject to the prohibitions of the act, and has reserved an amount of the article it estimates to be adequate for use as exhibits in the trial of any case that may arise under the act based on the sample, a part of the sample, if any remains available, shall be provided for analysis, upon written request, by any person named on the label of the article, or the owner thereof, or the attorney or agent of such person or owner, unless * * *"

There follow two exceptions which are not pertinent here.

The only testimony regarding the amount of the samples left after analysis was not from any collector but from the government's chief chemist of the Los Angeles station to whom the collector sent the collected samples. He nowhere testified that double the amount deemed needed for analysis was received, plus enough to use at the trial. All he testified to is that "the reason why samples were not furnished which the candy company requested was because all the samples at the Los Angeles station were used in the course of the analyses by the chemists involved; that there was no candy left over after the analyses could be sent to them."

It is thus apparent that the government, failing to supply the demanded samples, has not brought itself within the exceptions of the regulations created under the statute. The problem thus becomes one of the effect of such failure to obey the mandate that the Administrator "shall * * * provide" the samples. Was the furnishing to the owner of a portion of the sample on request, subject only to exceptions neces-

---

[1] The government in brief and argument treats the regulations as if they did not contain this pertinent section (b).

sary to successful administration and enforcement, intended to be a mandatory prerequisite to the successful maintenance of an information based on the Act, or was the statute directing that such furnishing be made intended as merely an administrative direction, failure to comply with which could not be complained of by those accused under the Act?

■ The statute, saying as it does that samples, with exceptions, *shall* be provided, is in terms mandatory. "* * * it is the language of command, a test significant, though not controlling." Escoe v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 820, 79 L. Ed. 1566. However, in cases involving prospective action of government officials, the word "shall" may be given a merely directory meaning if the law's purpose is rather the protection of the government by guidance of its officials than the granting of rights to the private citizens affected. Thus in Erhardt v. Schroeder, 155 U.S. 124, 15 S.Ct. 45, 39 L.Ed. 94, a statute was held merely to be a guide to public officers which provided, in language apparently mandatory, that the collector of the port of New York should examine at least a certain proportion of shipments sent to him for examination and appraisal; and an assessment based on inspection of less than the prescribed percentage was therefore upheld. In that statute no right was granted specifically (as here) or by inference to the persons interested in the shipments.

The problem is always whether construing the statute as providing merely administrative director would impair the interest, public or private, intended to be protected. Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566. In this case a statute was held mandatory which provided for a hearing on arrest of a probationer for recommitment for violation of the terms of his probation. And see Lyon v. Alley, 130 U.S. 177, 9 S.Ct. 480, 32 L.Ed. 899; French v. Edwards, 13 Wall. 506, 20 L.Ed. 702.

No decisions under the disputed section of the Act have been called to our attention and none has been disclosed by our search. One possible source of aid is the legislative history of § 372. The original Food and Drug Act, 34 Stat. 768, 21 U.S.C.A. § 1 et seq., was passed in 1906 and did not contain any section resembling the present sample provision. Regulations promulgated under the old Act apparently gave the administrator the right to take samples and provided that "upon request one subdivision, if available, shall be delivered to the party or parties interested." Regulations 3, Subdivision (c). In Congress the House amended the bill for the present statute to provide that samples should be furnished only "if available." That is to say, to make the statute conform to the existing regulation. The Senate rejected the amendment and the bill was finally passed in its present form with its mandatory "shall provide."

■ We hold that the provision is not merely directory—for the guidance of the Administrator—but mandatorily gives the right to samples to the accused manufacturers, unless the Administrator brings himself within the excepting regulations. This is assuming but not deciding that the present regulations providing for the giving of the sample "if any remains available" is a valid regulation where such a provision appeared in the prior regulation and its incorporation into the bill was proposed and denied.

The language in those cases which touch on the matter of sample apportionment as directed by statute is all to the effect that unless samples are furnished to the accused, no prosecution may be maintained. It was said in People v. Weaver, 116 App.Div. 594, 101 N.Y.S. 961, 965, "It is undoubtedly true that this provision * * * as to the delivery of the duplicate sample is imperative, and that a recovery could not be had if the inspector failed to comply with it." Remarks of similar tenor may be found in Commonwealth v. Lockhardt, 144 Mass. 132, 10 N.E. 511, and in People v. Bowen, 182 N.Y. 1, 74 N.E. 489. And see Commonwealth v. Wilson, 89 P.L.J. 469.

The English Sale of Food and Drugs Act provides that when an article is purchased with intent to submit it to the public analyst —presumably with an eye to prosecution under the act—the buyer shall notify the seller of his intention and offer to divide the article into three parts, giving one to the seller. The English cases have held that strict compliance with the sample furnishing requirement is an indispensable condition of prosecution. Auger v. Brown, [1919] 36 T.L.R. 61. Additionally, the notification of intent must be in accordance with the terms of the statute. Barnes v. Chipps, [1878] 3 Exch.Div. 176. And each of the three subdivisions must be substantially equal and of sufficient quantity so that it is capable of being analyzed. Lowery v. Hallard, [1906] 1 K.B. 398.

It is urged by appellee that none of these analogies is persuasive and that the case of United States v. Morgan, 222 U.S. 274, 32 S.Ct. 81, 56 L.Ed. 198, demonstrates that § 372 is simply directory in its nature. The Morgan case arose under a section, 21 U.S.C.A. § 11, which was predecessor to the present § 335, and which provided in mandatory terms that "Before any violation of this chapter is reported by the Administrator to any United States attorney for institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceedings." This section was held to be merely an administrative direction, failure to follow which did not invalidate further proceedings.

However, the section there interpreted is very different from the one involved in this case. An expressly stated ground of the Morgan decision was that violation of the statute would not deprive defendants of any substantial right. Failure of the Administrator to follow the Congressional directive would lead simply to a full and fair trial, without the slightest impairment of right or ability to defend against the charge. Malicious prosecution by the Administrator would remain impossible because of the requirement for filing an information or indictment. The purpose of the law was apparently to set up a common-sense procedure for the Administrator which might in some cases indicate the undesirability of instituting a formal action and in others clarify the issues for determination at the trial.

■ The purpose of § 372(b) is different. If those accused under the Act are not given a portion of the sample, their power to make a complete defense is substantially curtailed. Intent is no part of the crime with which they are charged. If they have introduced the food into interstate commerce, and if it is adulterated, they are guilty, regardless of their intent or lack of knowledge as to adulteration. It may frequently happen that the single factual issue is that of adulteration. Without access to a portion of the sample, they are confronted by a government analysis of that sample which they cannot refute but at best, and with difficulty, impeach by challenging the government's method of sampling and testing.

Section 372(b), then, must have been intended to provide defendants with an opportunity for independent analysis; and it is clear that the results of such analysis may be among the most important pieces of evidence defendants can offer in their own behalf. Deprival of the chance to make this test, unlike the elimination of the informal hearing involved in the Morgan case, prejudices defendants' substantial rights. This consideration, added to the statute's mandatory wording, and the analogy of cases under other acts, lead us to the conclusion that provision of a portion of the sample, save in properly excepted cases, is a condition precedent to prosecution.

■ Since, despite seasonable written request, no samples of the food involved in counts III, IV, VI and VII were furnished defendants, nor any reason offered for this failure, the convictions on these counts must be reversed. Counts II and V remain for consideration. The principal grounds of reversal urged as to these is that there was insufficient evidence to support a finding that the candy was physically adulterated with filth, or that it had been manufactured under conditions proscribed by the Act.

As to this second ground, government inspectors testified that, at times not far removed from the date of manufacture of the candy, conditions at appellants' plant were unsanitary. They gave evidence as to the presence of rats and cockroaches, and a showing was made that candy-making machines were left uncleaned after use. This, despite existence to contrary testimony, supports a finding of uncleanliness at the plant.

It is true that the evidence of actual physical adulteration of the candy involved in counts II and V did not disclose any extremely high proportion of alien substances, and that this evidence was met by evidence of an independent analysis of other portions of the samples which disclosed no adulteration whatsoever. However, evidence was offered to the effect that in a first test an analysis of three pounds of the candy involved in count II disclosed the presence of two small rodent hairs in one of the three one-pound subdivisions; that on a later inspection some months later, and two weeks previous to the trial, there were found in three pounds of the candy a total of two rodent hairs and three insect larva and fragments.

200

As to count V testimony was offered tending to show that in a total of two pounds of candy sampled, seven rodent hairs were found, as well as two insect fragments, and a fragment resembling a rodent pellet. We can not say that there was no evidence supporting the judgment of the trial court. The convictions on counts II and V are sustained.

Since two non-concurrent fines were validly levied on individual defendant Kennepohl, the assessed total of his Five Hundred Dollar fine remains unchanged, though the judgment is reversed as to counts III, IV, VI and VII. Since only two valid Five Hundred Dollar fines were levied on the corporate defendant Triangle Candy Company, the total fine imposed on it must be reduced from Fifteen Hundred Dollars to One Thousand Dollars.

The judgment against Kennepohl is affirmed as to counts II and V; as to counts III, IV, VI and VII it is reversed. The judgment against Triangle Candy Company is affirmed as to counts II and V; as to counts III, IV, VI and VII it is reversed.