FRED W. JONES, Judge.
This is an appeal from a judgment dismissing plaintiffs’ suit asking that the certification of a recall petition be set aside and that the recall election be cancelled. Plaintiffs argue the trial judge erred in the following respects:
1) The trial court erred, as a matter of law, by applying a rule of liberal construction to the provisions of La.R.S. 18:1300.1 et seq.
2) The trial court erred, as a matter of law, by counting the signatures which, on the face of the petition, did not bear “dates” or “addresses.”
3) The trial court erred, as a matter of law, in counting signatures which were not accompanied by dates and addresses in the hand of the elector.
4) The trial court erred, as a matter of law, to the extent it counted, or refused to eliminate, those electors who entered an “X” or a mark, where such “X” or mark was not accompanied by two witnesses other than the circulator of the petition.
5) The trial court erred, as a matter of law, in counting electors whose signature, dates, or addresses had been altered, tampered with or “whited out” by circulators of the petition.
6) The trial court committed error in computing the number of signatures that bore dates which were incomplete, apparently holding that there were no more than 188 such entries, when, on the face of the petition, the number of such entries exceed 700.
The issues in this case center around allegations of irregularities in the recall petition itself. The statutes governing the requirements for and contents of recall petitions are found in Title 18 of the Revised Statutes which contains the Louisiana Election Code.
As shown by La.R.S. 18:3, recall petitions shall contain: (1) the signature of the voter; (2) the date the voter signed the petition; (3) the ward or district and precinct of the voter; (4) the residence of the voter, including the municipal number, apartment number, rural route and box number; (5) the voter’s name typed or legibly written; (6) the name of the witness to the voter’s signature; and, (7) the date upon which the witness obtained and witnessed the signature. It should be noted that the above listed requirements apply to all petitions submitted to registrars of voters, not only to recall petitions. Furthermore, La.R.S. 18:3 was added to the election code by Act 669 of 1986. The introductory language of that act indicates that one purpose of the act was to provide uniform requirements relative to petitions submitted to registrars of voters. The consequences of the failure to include all the information required by La.R.S. 18:3 are shown, in the context of recall elections, by the provisions of La.R. S. 18:1300.3(E) which state that in determining the number of persons who are electors in the voting area, the Registrar of Voters shall not include the name of any person whose signature and address are not affixed to the petition. Thus, it would appear that in addition to the obvious necessity of the voter’s signature, the Legislature intended for the presence of an address on the recall petition to be an essential requirement for the counting of a voter’s name on a recall petition.
The importance of the voter’s address is also emphasized by La.R.S. 18:1300.2(D) which requires that each voter, at the time of signing the petition, shall enter his ad *342 dress and the date on which he signed beside or underneath his signature.
Turning now to the allegations of irregularities in the recall petition, the trial court categorized the allegations of irregularities as follows: (1) the addresses of certain parties who signed the recall petition were not in the handwriting of the parties who signed the petition; (2) the addresses of some of the parties signing the petition do not include the word “Minden” in the address; and, (3) the dates entered in conjunction with some of the signatures were not written in the handwriting of the voter and/or were dates which expressed the month and day but not the year.
The above listed allegations of irregularities apparently constitute the main thrust of the plaintiffs’ arguments, although there may be some other allegations of irregularities which would affect a small number of voters. In this regard, it should be noted that a “but for” rule applies to recall petitions. The provisions of La.R.S. 18:1300.-2(B) require that one-third of the registered voters sign the recall petition before a recall election will be held. Because there are 7,800 voters in the City of Minden, 2,600 valid signatures on the recall petition are needed in order for the recall election to be called. The Registrar of Voters certified 2,878 names, thus giving a surplus of 278 names above the number needed to call an election. Therefore, unless allegations of irregularities affect enough voters’ names to potentially erase more than 278 names, the allegations, even if valid, would not be sufficient to affect the validity of the recall petition. Moreau v. Tonry, 339 So.2d 3 (La.1976), appeal dismissed 430 U.S. 925, 97 S.Ct. 1541, 51 L.Ed.2d 769 (1977).
The above listed categories of alleged irregularities are the only categories which could effect a large enough number of names to potentially void the recall petition.
Initially, it is difficult to imagine how the failure of a voter to include the word “Minden” in his address could possibly void his signature on the recall petition. As previously noted, the provisions of La. R.S. 18:3 require “the residence address of the signer, including municipal number, apartment number, rural route, and box number.” Thus, the statutory language itself does not require the name of the municipality itself. Furthermore, it is obvious that the recall petition is for the recall of the mayor of the Town of Minden, so that the mere failure of the voter to include the name of the town in addition to his specific municipal number, apartment number, rural route, and box number should be of no significance.
The problem of names for which the dates of signing are expressed with the day and month, but not the year, is not serious enough to warrant striking the name from the petition. It is obvious from the date upon which the recall petition was initially filed with the Registrar of Voters and the date upon which the signed and dated petition was submitted to the Registrar of Voters, that the petition was signed during the latter months of 1988. Thus, the failure to include the year is not fatal.
There is little doubt that the most significant issue on appeal is the question of whether addresses, and in some cases dates, which were contained in the recall petition, but which apparently were not in the handwriting of the voter, should be stricken from the petition. There is a Louisiana case directly on point. In Bougere v. Edwards, 517 So.2d 501 (La.App. 5th Cir. 1987), reversed, 517 So.2d 141 (La.1987), the Mayor of Harahan appealed from a judgment denying him injunctive relief in his suit to halt an election to recall him from office. The trial judge held that 207 names should not be struck from the recall petition merely because the 207 voters who signed the petition did not themselves affix their addresses to the petition. Instead, their addresses were filled in by third parties. The trial court ruled that this fact was of no legal consequence. As a result, the petition still contained enough valid names to allow the recall election to go forward. On appeal, the Fifth Circuit held that the trial court erred in not striking the 207 names from the petition. As a result, the court reversed the judgment of the trial *343 court and enjoined the election. In so doing, the appellate court relied on the provisions of La.R.S. 18:1300.2(D) which states that each voter, at the time of signing the petition, shall enter his address and the date upon which he signed beside or underneath his signature. The court also relied upon La.R.S. 18:1300.3(E) which provides, that the Registrar of Voters shall not include the name of any person who has not affixed to the petition his signature and his address. The appellate court held that the procedures for recall petitions must be strictly complied with, and that in strictly construing the above referenced statutes, the court could only conclude that the legislature set forth three items which shall be affixed to the petition by the voter himself: (1) his signature; (2) his address; and, (3) the date upon which he signs. The court also noted that it had carefully weighed the arguments of the petitioners’ counsel, particularly their assertion that the interpretation of the pertinent statutes by the Court of Appeal was overly technical, and did not accord with any reasonable legislative purpose in enacting the laws. Counsel argued in this regard that the only purpose for requiring the address of the voter was to facilitate the work of the registrar in determining whether or not the elector signing the petition was a voter within the voting area. The Court of Appeal noted that it might subscribe to that view were the Court not bound to strictly adhere to the written law or were the statutes ambiguously worded. However, the court found that it would, in effect, have to read out part of the language of the statutes, or simply ignore the language, in order to construe it in the manner urged by the petitioners.
The Louisiana Supreme Court summarily reversed the Court of Appeal. No rationale for the reversal was given by the Supreme Court. However, it seems clear that by reinstating the judgment of the district court the Supreme Court agreed with the district court’s holding that the voter’s address need not be affixed to the petition in the voter’s own handwriting. We are bound by the Supreme Court’s decision in Bougere.
Although it is not necessary for us to speculate on the rationale underlying the Supreme Court decision in Bougere, there are at least two rationales upon which addresses entered by third parties can be found valid. First, we note the distinction drawn by the Louisiana Supreme Court between statutory requirements which are mandatory and those which are directory, as explained in the case of Sanders v. Department of Health and Human Resources, 388 So.2d 768 (La.1980). In that case, Ms. Sanders was appealing her removal from the position as cook at the East Louisiana State Hospital. She had been removed from her position for attempted theft of food from the hospital kitchen. Ms. Sanders filed a peremptory exception in the Court of Appeal, alleging for the first time that she had been improperly removed because the appointing authority (the hospital) had failed to comply with Civil Service Rule 12.3(a)(3) which provides that the appointing authority shall furnish the director a copy of the written letter of termination within 15 days of notification ofthe employee. The Court of Appeal noted that, although the application of the rule was “hypertechnical,” and Ms. Sanders had shown no prejudice resulting from its violation, the court was unable to uphold the termination.
The Louisiana Supreme Court reversed the Court of Appeal. The Supreme Court noted that Civil Services rules have the effect of law and are construed according to the rules of interpretation relative to legislation in general. The court then noted that statutes may be classified generally as either mandatory or directory. In this regard, the court stated:
“If mandatory, they prescribe, in addition to requiring the doing of the thing specified, the result that will follow if they are not done, where as, if directory, their terms are limited to what is required to be done. Generally, statutory provisions that do not relate to the essence of the thing to be done, and as to which compliance is a matter of convenience rather than substance, are directory, while provisions which relate to the *344 essence of the thing to be done, that is, matters of substance, are mandatory. Black’s Law Dictionary 414 (5th ed.1979).
“Rule 12.3(a)(3) is phrased in the imperative, a consideration which is significant though not controlling. See Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935). Whether procedural requirements such as those set forth in the rule are mandatory cannot be determined by a mere literal reading of the law but can only be determined by ascertaining the intent of the drafters. If a requirement is so essential to the statutory plan that the legislative intent would be frustrated by non-compliance, then it is mandatory. United States v. St. Regis Paper Company, 355 F.2d 688 (2d Cir.1966). Statutes, that, for guidance of a governmental official’s discharge of duties, propose to secure order, system and and dispatch in proceedings are usually construed as directory, whether or not worded in the imperative, especially when the alternative is harshness or absurdity. Ralpho v. Bell, 569 F.2d 607 (D.C.Cir.1977). The word ‘shall’ may be given merely directory meaning in cases involving prospective action of government officials if the law’s purpose is the protection of the government by guidance of its officials rather than the granting of rights to private citizens affected. Triangle Candy Co. v. United States, 144 F.2d 195 (9th Cir.1944). A significant consideration in determining whether a statutory requirement should be given mandatory or directory effect is a comparison of the results to which each such construction would lead. Holbrook v. United States, 284 F.2d 747 (9th Cir.1960).”
Applying the legal principles in Sanders to the facts of the instant case, it would appear that the requirements of La.R.S. 18:3 for the contents of a recall petition are, at least in part, mandatory. In addition to the use of the word “shall” in the introductory clause of the statute, the election code also provides for the result that will follow if the requirements are not met. The provisions of La.R.S. 18:1300.3(E) state that the registrar shall not include the name of any person who has not affixed to the petition his signature and his address. As previously noted, the purpose of requiring certain information in a petition presented to the registrar is to provide uniform requirements relative to such petitions, and it would appear that, when these requirements are considered in pari mate-ria with the provisions of La.R.S. 18:1300.-3(E), the legislature not only desires uniformity, but also insists upon the presence of the address of the elector in addition to his signature.
On the other hand, utilizing the same rationale with regard to the question of whether the address must be filled in by the elector himself, the result appears to be different. It is difficult to see how the elector’s personally entering his address on the petition can be considered so essential to the statutory plan that the legislative intent would be frustrated by non-compliance. Instead, the harshness and absurdity of striking a name merely because the address was not personally entered upon the petition by the elector indicate that the wording requiring the elector to “enter” his address and the date [La.R.S. 18:1300.-2(D)], and requiring the registrar not to count the name of any person who has not “affixed” his signature and his address [La.R.S. 18:1300.3(E) ], are directory to the extent that they may require the address to be personally written by the elector. The purpose of requiring an address is obvious: the address assists the registrar in matching the signature on the recall petition with the signature on the voter registration card kept by the registrar. If no address is present, then the registrar is provided with a statutory basis for not counting the signature of the elector on the petition. On the other hand, whether the address is entered by the hand of the elector or by a third party appears to be of little if any significance in this regard. Thus, it would appear that the statutory language relied upon by the Fifth Circuit in Bougere, supra, was not mandatory, but merely directive, insofar as that language may direct the elector to personally enter his address on the petition. The testimony of *345 Mrs. Franklin, the Registrar of Voters, supports this interpretation of the statute. She testified, in substance, that the information other than the signature was used for reference to identify the voter, in order that a comparison could be made between the signatures.
Furthermore, as an additional argument in favor of not striking the voter’s signature, even if the language of the statute could be interpreted as mandatory in requiring the voter to affix his address to the petition, the words “affix” and “enter” are broad enough to encompass not only the personal entering of the address by the voter, but also the entering of the address by a third party at the direction of the voter. See In re Rice, 181 N.E.2d 742, 35 Ill.App.2d 79 (1962) and State ex rel. Patton v. Myers, 186 N.E. 872, 127 Ohio St. 95 (1933), both of which presented not only similar statutory language, but also the same issue as the instant case, and both of which held that the addresses of the petitioner need not be written personally by the petitioners, but could be written by third parties at the direction of the signing party.
The burden of proof was on the plaintiffs to show that the recall petition did not meet the statutory requirements. The record does not contain evidence indicating whether the addresses which were filled in by third parties were entered at the direction of the voter nor does it demonstrate that more than a few “whited-out” addresses were replaced by addresses other than the ones originally written by the voters. Thus, it can be said that even if the language of the statute required the voter to enter his address, either personally or through a third party at his direction, the plaintiffs failed to carry their burden of proof of showing that the addresses were not entered at the direction and/or with the approval of the voter, or that they were otherwise improper.
In summary, the record simply will not support any allegations of fraud. Moreover, while there do appear to be addresses and dates entered by third parties rather than by the voter signing the petition, the summary reversal of the Fifth Circuit by the Louisiana Supreme Court in Bougere, supra, combined with the Supreme Court’s discussion of mandatory versus directive language in Sanders, leads to the conclusion that the entering of the addresses by third parties is not fatal to the certification of the signatures. Finally, even if the language were mandatory, the mayor did not carry his burden of proof of showing that the addresses were not placed on the petition at the direction of the voters, or that they were improper for any other reason.
Contrary to plaintiffs’ argument, we do not find that the Legislature intended to overrule Bougere in 1988 by amending La. R.S. 18:1300.2(D). At any rate, this statute does not become effective until January 1, 1989.
With regard to the other specifications of error, we agree with the trial judge that the number of names that could be stricken from the petition would not be sufficient to bring the total number of proper signatures below the required 2600 number. This includes the complaint concerning the “white-outs”. Cost, the prime mover in securing signatures for the recall petition, testified that he “whited-out” no more than five signatures after learning the individuals did not live in Minden. He also conceded to having “whited-out” some addresses, generally in order to make them more legible for reading by the Registrar. He did not estimate the number of those. Be that as it may, there was no evidence that sufficient signatures and addresses were “whited-out” to bring the total number of singatures on the recall petition below that 2600 number.
For these reasons, the judgment of the trial court is AFFIRMED.