UNITED STATES v. ST. LOUIS COFFEE & SPICE MILLS.

(District Court, E. D. Missouri, E. D.    May 22, 1909.)

No. 15,399.

1. Food (§ 20*)—Food and Drugs Act—Adulteration—"Extract"—"Flavor."

An information charging that defendant sold in interstate commerce a liquid labeled "Flavor of Vanilla," which did not contain any extract of vanilla, does not state a case of adulteration or misbranding of vanilla extract in violation of Food and Drugs Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1188), the words "extract" and "flavor" not being synonymous terms.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 20.*

For other definitions, see Words and Phrases, vol. 3, p. 2625.]

2. Food (§ 12*)—Food and Drugs Act—Violation by Adulteration.

Circular No. 19, issued by the Secretary of Agriculture under authority of Act March 3, 1903, c. 1008, 32 Stat. 1158, establishing standards of purity for food products and what are regarded as adulterations therein,

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cannot be considered in determining what constitutes the offense of adulteration in violation of Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187).

[Ed. Note.—For other cases, see Food, Dec. Dig. § 12.*]

**3. FOOD (§ 20*)—VIOLATION OF FOOD AND DRUGS ACT—INFORMATION.**

An information charging a defendant with selling an adulterated or misbranded article of food in interstate commerce in violation of Food and Drugs Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1188), should specifically charge the manner of adulteration as defined in section 7 of the act, or of misbranding as defined in section 8.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 20.*]

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

**4. ADULTERATION (§ 4*)—DEFINITION.**

The word "adulteration," as used in Food and Drugs Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1188), means to corrupt, debase, or make impure by an admixture of a foreign or a baser substance.

[Ed. Note.—For other cases, see Adulteration, Cent. Dig. §§ 4–9; Dec. Dig. § 4.*]

For other definitions, see Words and Phrases, vol. 1, pp. 210–212.]

Criminal prosecution by the United States against the St. Louis Coffee & Spice Mills. On demurrer to evidence. Sustained.

Truman Post Young, Asst. U. S. Atty.

Thos. G. Rutledge and Schnurmacher & Rassieur, for defendant.

DYER, District Judge. Since the adjournment of court on yesterday I have considered more fully the demurrer interposed by the defendant's counsel to the case as stated in the two counts of the information and the evidence offered by the government in support thereof. This is the first case arising under the act of June 30, 1906 (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]), entitled "An act for preventing the manufacture, sale or transportation of adulterated or misbranded, or poisonous or deleterious foods, drugs, medicines, and liquors, and for regulating traffic therein, and for other purposes," that has been presented to this court for determination. For a violation of this statute penalties are imposed, and it is made the duty of the United States Attorney, when the Secretary of Agriculture shall report to him any violation of the act, to cause appropriate proceedings to be commenced and prosecuted without delay, for the enforcement of the penalties, etc. The Secretary reported this defendant to the district attorney, and as a result the information now under consideration was filed in this court. The proceeding is for the violation of a statute that imposes penalties, and by its terms declares each violation a misdemeanor. The information therefore should be as certain and definite as if the offense were charged in an indictment. Judging it by the well-recognized requirement of pleading in such cases, do the counts or either of them state clearly and with sufficient certainty any offense against the statute under which the proceeding was commenced and is now pros-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ecuted? The importance of and the great good to the public that will follow the enforcement of this act can hardly be measured, and the delay taken by the order of adjournment on yesterday was for the purpose of enabling the court to determine (with proper regard to the contention of the district attorney on the one side and of defendant's counsel on the other) its decision.

[1] The first count of the information charges in substance: "That by circular No. 19 of the United States Department of Agriculture, dated *June 26th, 1906,* the Secretary established certain standards of purity for food products as authorized by the act of Congress of March 3, 1903" (Act March 3, 1903, c. 1008, 32 Stat. 1158). That said order No. 19 provided that "vanilla extract is a flavoring extract prepared from vanilla bean, etc." The count then states "that in trade and commerce and the science of food chemistry, the words 'vanilla extract' signify an extract prepared from the 'vanilla bean, etc.,' and in trade and commerce the words 'vanilla extract' are synonymous with the words 'vanilla flavor' when placed on bottles containing a liquid to be used for flavoring purposes."

The information (after making the foregoing recitals) charges that the defendant on the 26th of October, 1907, unlawfully and knowingly shipped by the Missouri Pacific Railroad from St. Louis, Mo., to Kansas City, for sale in interstate commerce, a certain bottle labeled *"Nectar Choice Flavor of Vanilla,* sugar colored, for flavoring ice cream, etc.;" that the contents of the bottle were *adulterated* in violation of the act of June, 1906, in that said bottle contained a liquid which did not contain any extract of vanilla as defined by circular No. 19, and by the usages of trade and commerce, and was in fact an imitation and substitute therefor, etc.

By the word "adulteration," as used in the act, it is understood to mean "to corrupt, debase, or make impure by an admixture of a foreign or a baser substance." How can it be successfully claimed that because the liquid in the bottle offered in evidence did not contain extract of vanilla that it was therefore adulterated within the meaning of the statute?

[2] The circular No. 19 issued by the Secretary of Agriculture was issued long before the enactment of the statute under which this proceeding is had, and for that reason, if for no other, cannot be considered in determining the question of the guilt or innocence of the defendant in this case.

By section 2 of the act of June 30, 1906, it is made an offense to introduce into any state, etc., any food or drugs *adulterated* or *misbranded.*

The first count charges that the bottle sent from St. Louis to Kansas City contained "adulterated liquid extract or flavor." It also charges that the liquid did not contain any extract from the "vanilla bean," but did have a vanilla *flavor.* The court is now asked to say that "Vanilla Extract" and "Vanilla Flavor," as known to the trade, is one and the same thing, and that in dealing with the defendant in this case "extract" and "flavor" are synonymous in meaning, and that, therefore, if the defendant shipped a liquid which had the flavor

of vanilla it was guilty of *adulteration* of the extract of vanilla, within the meaning of the statute. Neither the Secretary of Agriculture nor the public generally can change the meaning of the words "extract" and "flavor." Without reference to the dictionaries and the definitions of the words contained therein, it is known that "extract" is one thing and "flavor" another. The evidence in this case has failed to convince the court that even among dealers the words "extract" and "flavor" are considered synonymous terms.

[3] The information charges that there was an adulteration of the article, but fails to state in what particular and how it was adulterated. It states a conclusion without making the necessary averments from which the conclusion could be fairly reached. Section 7 of the act of June, 1906, provides that an article shall be deemed to be adulterated when:

"In case of food:

"First: If any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength.

"Second: If any substance has been substituted wholly or in part for the article.

"Third: If any valuable constituent of the article has been wholly or in part abstracted.

"Fourth: If it be mixed, colored, powdered, coated or stained in a manner whereby damage or inferiority is concealed.

"Fifth: If it contain any added poisonous or other deleterious ingredient which may render such article injurious to health."

The information fails to charge that the article sold and delivered to the grocer in Kansas was mixed or packed in such a manner as to reduce or lower or injuriously affect its quality or strength, nor does it charge that any substance was substituted for the article; nor does it charge that any valuable constituent was abstracted; nor does it charge that the article was colored in a manner whereby inferiority was concealed; nor does it charge that the article contained any added poisonous or other deleterious ingredient that would render it injurious to health. It would seem that one or more of these things should be specifically charged in the information, and that the charge should be made with such particularity as to fairly inform the defendant of the act of violation complained of, and for which it is to answer. The conclusion reached by the court is that the first count does not sufficiently charge an offense under the statute, and that the evidence offered by the government does not aid the defect.

The second count is similar in all respects to the first, as far as the recitals are concerned. This count seeks to charge "misbranding" under section 8 of the act. That section is as follows:

"Sec. 8. That the term 'misbranded,' as used herein, shall apply to all drugs, or articles of food, or articles which enter into the composition of food, the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular, and to any food or drug product which is falsely branded as to the state, territory, or country in which it is manufactured or produced.

"That for the purposes of this act an article shall also be deemed to be misbranded * * * in case of food:

"First: If it be an imitation of or offered for sale under the distinctive name of another article.

"Second: If it be labeled or branded so as to deceive or mislead the purchaser, or purport to be a foreign product when not so, or if the contents of the package as originally put up shall have been removed in whole or in part and other contents shall have been placed in such package, or if it fail to bear a statement on the label of the quantity or proportion of any morphine, opium, cocaine, herion, alpha or beta, eucaine, chloroform, cannabis indica, chloral, hydrate, or acetanilide, or any derivative or preparation of any of such substances contained therein.

"Third: If in package form, and the contents are stated in terms of weight or measure, they are not plainly and correctly stated on the outside of the package.

"Fourth: If the package containing it or its label shall bear any statement, design, or device regarding the ingredients or the substances contained therein, which statement, design, or device shall be false or misleading in any particular; provided, that any article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases:

"First: In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under their own distinctive names, and not an imitation of or offered for sale under the distinctive name of another article, if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced.

"Second: In the case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends, and the word 'compound,' 'imitation' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale; provided, that the term 'blend' as used herein shall be construed to mean a mixture of like substances, not excluding harmless coloring or flavoring ingredients used for the purpose of coloring and flavoring only."

It will thus be seen that this count does not follow the words of the statute in charging the offense, but repeats the facts contained in the first count.

The charge in this, as in the first count, should be specific enough to fairly inform the defendant of the charge it is to meet. In my opinion the count is insufficient.

There is nothing left for the court to do on this information but to direct a verdict of not guilty.