The **UNITED STATES**

v.

The **KENDALL COMPANY, a corporation trading and doing business under the name of Davies Rose Hoyt Pharmaceutical Division of the Kendall Company**

and

**John Brennan, an individual.**
**Crim. No. 70–260–G.**

United States District Court,
D. Massachusetts.
March 17, 1971.

Herbert F. Travers, Jr., Richard E. Bachman, Boston, Mass., for plaintiff.

Paul B. Galvani, Ropes & Gray, Boston, Mass., for Kendall Co.

Timothy H. Donohue, Boston, Mass., for John Brennan.

## MEMORANDUM AND ORDERS ON DEFENDANTS' MOTIONS

GARRITY, District Judge.

This is a criminal prosecution on the basis of an information charging the defendant company and the manager of its pharmaceutical division with seven counts of unlawfully causing to be introduced and delivering for introduction into interstate commerce the drug digoxin which was adulterated within the meaning of 21 U.S.C. § 351(a) (2) (B) and 21 U.S.C. § 351(b). There are presently three defense motions pending in this case. The court received affidavits and memoranda of law and heard oral argument.

### Motion to Dismiss

The first is a motion to dismiss the information insofar as it charges defendants with violations of 21 U.S.C. § 351(a) (2) (B) on the ground that the language "current good manufacturing practice" is void for vagueness. This motion is denied. See United States v. Bel-Mar Laboratories, Inc., E.D.N.Y., 1968, 284 F.Supp. 875, 881–884.

### Motion to Dismiss or in the Alternative to Suppress

The second motion pending is a motion to dismiss the information or, in the alternative, to suppress for use as evidence government test results of the

digoxin referred to since the Government is unable to furnish the defendants with portions of the samples of digoxin tested by it.

Title 21 U.S.C. § 372(b) requires the FDA to provide a part of the official sample taken to the owner upon his request. The Government, stating that the pills actually tested were destroyed in the analysis, has offered to provide other pills taken from the same bottle as the pills tested. The defendants contend that they are entitled to a portion of the actual pills tested.

In Triangle Candy Co. v. United States, 9 Cir., 1944, 144 F.2d 195, the court reversed a judgment of conviction where despite a seasonable request by the company the Government failed to furnish a sample of the food tested and offered no reason for this failure. However, the case of United States v. Bel-Mar Laboratories, Inc., *supra*, has a more direct application to the case at bar. In *Bel-Mar*, vials of certain drugs were tested by the Government, and the Government wanted to satisfy its obligation under 21 U.S.C. § 372(b) by providing defendant with samples in the form of other unopened vials of the drug in question. The court ordered the Government to supply defendants with portions of the drug in the opened vials from which the tests were made since the Government did not assert that such portions would not be fair samples of the condition of the drugs as originally seized. The court continued at 284 F. Supp. p. 887.

"The Government may be relieved of this obligation, however, upon a showing either that the balance of the tested vials are no longer available, or that changes in the conditions of the drugs in those vials would render further testing valueless."

At least in a case like the present one involving essentially fungible pills, where the actual pills tested were destroyed in the analysis, and where pills from the very bottles from which test samples were taken are available, the Government is relieved of its obligation to provide defendants with a part of the actual pills tested. Accordingly, this motion of defendants is also denied.

### Motion to Suppress

▉▉▉ The third motion pending is for suppression of evidence. Originally grounded on the lack of a search warrant, this motion now presents the issue whether defendants consented to the searches which resulted in the seizures of digoxin tablets. The issue of consent to a search by FDA inspectors has been raised in three recent cases, United States v. Hammond Milling Co., 5 Cir., 1969, 413 F.2d 608; United States v. Thriftimart, Inc., 9 Cir., 1970, 429 F.2d 1006; and United States v. J. B. Kramer Grocery Co., 8 Cir., 1969, 418 F.2d 987, affirming, D.C., 294 F.Supp. 65. Only in the latter case did the court hold the search invalid because consent was lacking. The key facts in the *Kramer* case were that Mr. Kramer clearly didn't want to allow the inspection and in response to this clearly expressed opposition the inspector stated that he had a right to inspect, that Kramer couldn't do anything about it, that the law required it, etc.[1]

The present case does not approach the *Kramer* facts. At a preliminary meeting between defendant corporation and its representatives and representatives of the FDA, defendants' consent was obtained for the ensuing inspections. In their reply memorandum, defendants assert that the FDA officials misrepresented their authority to conduct inspections without a warrant. However, at the March 20 meeting, defendant corporation was represented by an attorney and the exchange of letters indicates that the meeting at which con-

---

1. It is settled in the light of Camara v. Municipal Court, 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, and See v. City of Seattle, 1967, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943, that the law cannot constitutionally require a proprietor to allow inspection without a warrant at the risk of criminal penalties.

sent was obtained was held in a businesslike, cooperative manner. In any case, it is abundantly clear that the intimidation apparently present in *Kramer* could not have occurred.[2]

Defendants further argue that certain guidelines were established for the "consent search" and that FDA officials did not comply with them, e. g., the FDA officials did not submit to defendants a written report of violations of current good manufacturing practices as required by the guidelines. In the court's opinion, the "guidelines" as set forth in Mr. Healton's letter of March 27, 1969 do not require a writing specifically for the purpose of informing defendants of alleged violations. Furthermore, even if a writing for that purpose were required, the failure to provide one would not vitiate prior consent where oral reports of alleged violations were given to defendants on several, if not numerous occasions, so that the defendant corporation had plenty of time to move in good faith to correct them. (See affidavit of John A. Hamilton, Jr., Supervising Inspector.) Accordingly the motion for suppression of evidence is denied.

2. In the court's opinion, a further evidentiary hearing on this matter would serve no purpose.