**UNITED STATES of America, Plaintiff,**

v.

**MEDWICK LABORATORIES, INC.,
et al., Defendants.**

**No. 76 C 1419.**

United States District Court,
N. D. Illinois, E. D.

April 28, 1976.

Samuel K. Skinner, U. S. Atty., Frederick H. Branding, Asst. U. S. Atty., Chicago, Ill., Alan R. Bennett, Asst. Chief Counsel for Enforcement, Food and Drug Administration, Harry Shulman, Trial Atty., Food and Drug Administration, for plaintiff.

W. J. Holloway, Chicago, Ill., and Richard S. Morey, Washington, D. C., Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

## TEMPORARY RESTRAINING ORDER

McMILLEN, District Judge.

This action was commenced on April 14, 1976, when the government filed a Complaint for Injunction seeking a temporary restraining order, a preliminary injunction and a permanent injunction against the defendant drug manufacturer and its agents. The government seeks to enjoin numerous irregularities allegedly engaged in by defendants in violation of Sections 301(a) and (k) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331(a), (k). Injunctive relief to enjoin violations of Section 301 is specifically authorized by 21 U.S.C. § 332(a).

The government has filed four affidavits in support of its prayer for a temporary restraining order. These affidavits were prepared by employees of the Chicago District Office of the Food and Drug Administration, and show a consistent pattern over the past 20 months of defendants' failure to comply with current good manufacturing practices necessary to assure that articles of drug have the safety, identity, quality and purity characteristics of those substances which they purport to possess.

Beginning in October 1974, and as recently as March 9, 1976, Food and Drug Administration Consumer Safety Officers have made at least five inspections of defendants' plant and have found, on each occasion, that the methods used in, and the facilities and controls used for, the manufacturing, processing, packing and holding of drugs at said plant, have failed to conform with current good manufacturing practices under 21 C.F.R. §§ 210.3, 211.1–211.115 (1975). Defendants' failure to comply with these practices results in the drugs produced thereunder being unlawfully adulterated within the meaning of 21 U.S.C. §§ 331(a), (k), 351(a)(2)(B). The introduction or delivery for introduction into interstate commerce of any adulterated drug is specifically prohibited under Section 301(a) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331(a).

Defendants have filed four counter-affidavits in opposition to the government's demand for temporary injunctive relief. These affidavits, by Medwick Laboratories' officers, indicate that defendants are attempting to correct their past departures from good manufacturing practices by taking steps to make changes and improvements in those processes. Such efforts will take time, however, and the public's interest must not be jeopardized in the interim. Not even the complete cessation of the alleged violative acts will, of itself, afford grounds for denying injunctive relief under the Food, Drug and Cosmetic Act. See *United States v. Article of Drug Designated B–Complex Cholinus Capsules,* 362 F.2d 923, 928 (3d Cir. 1966).

Defendants have also submitted the affidavits of two outside consultants to show that the use of these adulterated drugs is not likely to present any real hazard to the public. Although the government has yet to prove that defendants' drugs present a significant health hazard to the public, such proof of irreparable injury or proof that the drugs are unsafe is unnecessary for injunctive relief under the Act. *United States v. Diapulse Corp. of America,* 457 F.2d 25 (2d Cir. 1972). See also *United States v. Bel-Mar Laboratories, Inc.,* 284 F.Supp. 875, 881 (E.D.N.Y.1968); *United States v. Lit Drug Co.,* 333 F.Supp. 990 (D.N.J.1971).

In spite of the numerous inspections, product recalls and communications between the parties, the court finds that defendants have violated the foregoing regulations and are continuing to do so. Hence temporary injunctive relief is warranted in order to protect the public from potentially unsterile, adulterated and sub-potent injectable and ophthalmic drugs now in defendants' possession and yet to be produced under current conditions. The court finds that, pending a hearing and decision on the government's motion for preliminary and

permanent injunctive relief, there is a substantial likelihood that defendants will continue to manufacture and ship products in interstate commerce in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331(a) and (k), unless restrained by this court.

The court notes, however, that the government has not contended that any of the articles of drug already manufactured and presently on hand are in fact dangerous to the health and well-being of potential users. Nor has the government shown that the safety, identity, quality, and purity of inventory drugs could not be assured by appropriate sample testing and assay procedures. We are not at this juncture deciding the reasonableness or constitutionality of the regulations involved, except prima facially.

■ Defendants will also be given the opportunity to show that not every sterile injectable or ophthalmic drug which they manufacture is tainted by their current manufacturing practices. To subject properly manufactured drugs to the prohibition of an injunction would be inequitable, but neither party has yet attempted to separate the bad practices from those which may be good. Therefore, our temporary restraining order will cover all products identified by the complaint until the parties have had an opportunity for further hearings or agreements.

IT IS THEREFORE ORDERED that the defendants, Medwick Laboratories, Inc., a corporation, and Robert S. Tutag, George A. Albrecht, James J. Boyce, and Jack Antus, individuals, and any and all persons in active concert or participation with them or any of them be temporarily restrained and enjoined from directly or indirectly doing or causing to be done any of the following acts:

1. Introducing or delivering for introduction into interstate commerce any article of sterile injectable or ophthalmic drug which has been or is being manufactured, processed, packed, or labeled at said defendants' plant at 2137 North 15th Avenue, Melrose Park, Illinois, and manufacturing, proc-

essing, packing, or labeling at said plant any such article of drug while held for sale after shipment of one or more of its components in interstate commerce unless and until:

(a) All of the sterile injectable or ophthalmic drugs which have been manufactured, processed, packed, or held at said plant and which are on hand in possession of the defendants are examined by the defendants under the supervision of, and in accordance with methods approved by the Food and Drug Administration, in order to assure that these drugs have the safety, identity, strength, quality, and purity which they purport and are represented to possess; and

(b) All examined drugs are found to be in compliance with the law or are brought into compliance or are destroyed, and any portion of a batch already distributed and found after examination to be adulterated is recalled, under the supervision of the Food and Drug Administration.

(c) Methods, facilities, and controls for manufacturing, processing, packing, and labeling any article of sterile injectable or ophthalmic drug at said plant are established, operated, and administered in conformity with Current Good Manufacturing Practice as promulgated in 21 C.F.R. §§ 210.3, 211.1–211.115 (1975).

(d) Defendants report to the Food and Drug Administration what actions they have taken to assure that the methods used in, and the facilities and controls used for the manufacturing, processing, packing, and holding of said sterile injectable or ophthalmic drugs are operated and administered in conformity with the aforesaid Current Good Manufacturing Practice Regulations.

2. Introducing and delivering for introduction into interstate commerce any article of sterile injectable or ophthalmic drug which has been manufactured, processed, packed, labeled, or held at the defendants' plant, until after compliance has been made with the provisions of par. 1 hereinbefore set forth, and which is adulterated within

the meaning of 21 U.S.C. §§ 351(a)(2)(B), 351(b), or 351(c).

IT IS FURTHER ORDERED that defendants will afford free access to said plant for duly authorized Food and Drug Administration representatives for the purpose of making such inspections of said plant including the building, pertinent equipment, finished and unfinished materials, containers, labeling and all records relating to the methods used in, and the facilities and controls used for, the manufacture, processing, packing, labeling, and holding of such drugs as the Food and Drug Administration deems necessary in order to determine that the requirements set forth hereinabove have been met.

Unless otherwise ordered by this court, this order shall expire ten (10) days after it is entered.